**Opinion issued November 21, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

———————

## NO. 01-11-00596-CR

———————

## JOSEPH LESTER ROBINSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 232nd District Court
Harris County, Texas
Trial Court Cause No. 1278417

## MEMORANDUM OPINION

Appellant, Joseph Robinson, pleaded guilty to the burglary of a habitation and pleaded "true" to two felony enhancements. The trial court found appellant

guilty, found the enhancements true, and assessed punishment at 35 years' confinement.

Robinson's appointed counsel on appeal has submitted a brief stating his professional opinion that the appeal is without merit and that there are no arguable grounds for reversal. *See Anders v. California*, 386 U.S. 738, 744, 87 S. Ct. 1396, 1400 (1967).

In his pro se response to the *Anders* brief, Robinson contends that: (1) the trial court improperly denied his motion to suppress; and (2) his trial counsel was ineffective in failing to object to certain exhibits admitted at trial and in failing to adequately cross-examine the State's witnesses. A review of the record reveals no arguable ground for appeal. We therefore affirm.

## Background

On August 31, 2010, witness Johnny O'Bryant observed a car pull up in front of the apartment of Trishaul Lewis. It was approximately 10:00a.m. and it was a sunny day. A man later identified as Joseph Robinson got out of the passenger side of the car, walked up to the apartment, and kicked the front door open. O'Bryant watched Robinson for approximately five minutes.

Witness Jason O'Connor, a maintenance worker, learned of the break-in and leaned halfway out of the back door of the leasing office to observe the back porch

2

of Lewis's apartment. O'Connor testified to seeing "a [b]lack male wearing a white muscle shirt and black shorts. His hands were stretched out over the guardrail and he was looking exactly in [O'Connor's] direction." O'Connor also described the man as "kind of stocky, bigger than [him]" and had a few tattoos on his neck and arms. O'Connor briefly saw the hands and face of another African American male, but both individuals went back into the apartment.

Deputy Marquez was dispatched to the scene for an "in progress" event. When he arrived, Deputy Marquez noticed that the front door of Lewis's apartment was broken off its frame. After determining that no suspects were in the area, he began inspecting for missing property. Deputy Marquez saw several items lined up at the front door of the apartment, including a television and a set of wheels and tires. He dusted them for fingerprints.

Lewis testified that she lived at the apartment in question and no one other than her had a right to possess it. She did not give any consent for Robinson to be in her apartment. Lewis testified that she knew Robinson and that he had been to the apartment once before for a barbeque. Lewis told Deputy Marquez that the items missing were two laptop computers, some clothing, and a lot of shoes. She later testified in court that a television, a generator, some jewelry, tools, and some baby things were missing.

Four days later, Deputy Marquez presented photographic lineups to O'Bryant and O'Connor. O'Bryant described the man he saw as "short, light skinned, stocky buil[d]" and identified Robinson in a matter of seconds. O'Bryant testified that he had seen Robinson on the property three or four times before. O'Bryant offered inconsistent testimony as to Deputy Marquez's instructions, but Deputy Marquez testified that he did not instruct either witness that the suspect may or may not be in the lineup. O'Bryant again identified Robinson in the courtroom at trial.

O'Connor also identified Robinson in the photographic lineup. He said that he recognized Robinson "instantly," and that he "knew for a fact. . . one hundred percent." He also identified Robinson in court.

Deputy Maurice Carpenter, a crime scene investigator for the Harris County Sherriff's Office, testified about the fingerprints that Deputy Marquez recovered from the items lined up in Lewis's apartment. He examined two right thumb fingerprints that were lifted from a thirty-two inch television and compared them to inked prints of Robinson, confirming a match.

Robinson produced an alibi witness, Shantea Cornelius, who testified that Robinson was at her house the morning of the incident.

## *Anders* **Procedure**

The brief submitted by Robinson's court-appointed counsel states his professional opinion that there are no arguable grounds for reversal on appeal and that any appeal would, therefore, lack merit. *See Anders*, 386 U.S. at 744, 87 S. Ct. at 1400. Counsel's brief meets the minimum *Anders* requirements by presenting a professional evaluation of the record and stating why there are no arguable grounds for reversal on appeal. *See Gainous v. State*, 436 S.W.2d 137, 138 (Tex. Crim. App. 1969). Counsel sent a copy of the brief to Robinson, requested permission to withdraw from the case, and notified Robinson of his right to review the record and to file a pro se response.

When we receive an *Anders* brief from a defendant's court-appointed attorney who asserts that no arguable grounds for appeal exist, we must determine that issue independently by conducting our own review of the entire record. *See Anders*, 386 U.S. at 744, 87 S. Ct. at 1400 (emphasizing that reviewing court—and not counsel—determines, after full examination of proceedings, whether case is "wholly frivolous"); *Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991). In conducting our review, we consider any pro se response that the defendant files to her appointed counsel's *Anders* brief. *See Bledsoe v. State*, 178 S.W.3d 824, 826–28 (Tex. Crim. App. 2005).

5

Our role in this *Anders* appeal, which includes reviewing Robinson's pro se response, is limited to determining whether arguable grounds for appeal exist. *See id.* at 827. If we determine that arguable grounds for appeal exist, we abate the appeal and remand the case to the trial court to allow the court-appointed attorney to withdraw. *See id.* The trial court then either appoints another attorney to present all arguable grounds for appeal or, if the defendant wishes, allows the defendant to proceed pro se. *See id.* We do not rule on the ultimate merits of the issues raised by Robinson in his pro se response. *See id.* If we determine that there are arguable grounds for appeal, Robinson is entitled to have new counsel address the merits of the issues raised. *See id.* "Only after the issues have been briefed by new counsel may [we] address the merits of the issues raised." *Id.*

If, on the other hand, we determine, from our independent review of the entire record, that the appeal is wholly frivolous, we may affirm the trial court's judgment. *See id.* at 826–28. Robinson may challenge the holding that there are no arguable grounds for appeal in a petition for discretionary review filed in the Court of Criminal Appeals. See *id.* at 827 & n.6.

In accordance with *Anders* and *Bledsoe*, we have reviewed the record, Robinson's appointed counsel's *Anders* brief, and Robinson's pro se response to that brief. We conclude that no arguable ground for reversible error exists. Having

6

reached that conclusion, we affirm the judgment of the trial court and grant Robinson's appointed counsel's motion to withdraw.[1]

## Conclusion

We affirm the judgment of the trial court and grant appointed counsel's motion to withdraw.


Jane Bland
Justice

Panel consists of Justices Bland, Massengale, and Brown.

Do not publish.   TEX. R. APP. P. 47.2(b).

---

[1] Appointed appellate counsel still has a duty to inform Robinson of the result of this appeal and that he may, on his own, pursue discretionary review in the Court of Criminal Appeals. *See Bledsoe v. State*, 178 S.W.3d 824, 827 & n.6 (Tex. Crim. App. 2005); *Ex parte Wilson*, 956 S.W.2d 25, 27 (Tex. Crim. App. 1997); *Stephens v. State*, 35 S.W.3d 770, 771–72 (Tex. App.—Houston [1st Dist.] 2000, no pet.).